**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| REGINA A. RANDOLPH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 06-1228 CKK |
| | ) | |
| ING LIFE INSURANCE AND | ) | |
| ANNUITY COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT ING LIFE INSURANCE AND ANNUITY COMPANY'S MOTION TO DISMISS

Defendant ING Life Insurance and Annuity Company ("ILIAC"), through undersigned counsel, respectfully moves the Court to dismiss plaintiffs' Complaint for lack of standing, for failure to state a claim upon which relief can be granted, and for mootness. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6); LCvR 7. A Memorandum of Points and Authorities in support of the Motion is attached. In the event this Motion cannot be decided on the papers, pursuant to LCvR 7(f), ILIAC requests an oral hearing.

Dated: September 1, 2006

Respectfully submitted,

 /s/ Stephen M. Nickelsburg
Alan Charles Raul, D.C Bar # 362605
Juan P. Morillo, D.C. Bar # 257790
Stephen M. Nickelsburg, D.C. Bar #475920
Peter C. Pfaffenroth, D.C. Bar #496637
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

Attorneys for Defendant
ING Life Insurance and Annuity Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REGINA A. RANDOLPH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 06-1228 CKK |
| | ) | |
| ING LIFE INSURANCE AND | ) | |
| ANNUITY COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ING LIFE INSURANCE AND ANNUITY COMPANY'S MOTION TO DISMISS

Defendant ING Life Insurance and Annuity Company ("ILIAC"), through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss for lack of standing, for failure to state a claim, and for mootness.

### INTRODUCTION

This case arises out of a common burglary of the home of an ILIAC representative (the "representative") on or about June 11, 2006. ILIAC has administered and currently administers retirement savings plans offered to D.C. Government employees, including the District of Columbia 457 Deferred Compensation Plan (collectively, the "Plan"). The representative whose laptop was stolen supported the Plan by enrolling D.C. employees in the Plan and by assisting them with their retirement savings questions.

One of the items stolen from the representative's home was his laptop computer, which contained the personal information of approximately 14,000 Plan participants (the

"Participants") — including their names, addresses, and Social Security numbers. There is no indication or allegation that the laptop was stolen for the purpose of obtaining the Participants' personal information, or that any of their information has been accessed or used for any purpose. Nonetheless, ILIAC has taken significant steps to protect the Participants. Specifically, ILIAC arranged and funded a generous credit monitoring, fraud protection, and expense and loss reimbursement program for the Participants — a program which offers *lifetime* protection in the unlikely event that any actual identity theft occurs.[1]  ILIAC conducted on-site enrollment seminars for D.C. Government employees shortly after the theft, and ILIAC continues to facilitate employee enrollment today.

After ILIAC took steps to protect the Participants and just two weeks after the burglary, on June 27, 2006, plaintiffs filed the instant Complaint on behalf of a putative class comprised of the individuals whose information was contained on the stolen laptop. *See* Compl. ¶ 27. Plaintiffs do not claim they or any other Participants have suffered actual identity theft or any other actual harm as a result of the burglary. Instead, they allege a "heightened risk" of future harm in the form of identity theft — ignoring the measures ILIAC has offered to protect against any such risk.

ILIAC respectfully moves to dismiss the Complaint for three reasons. <u>First</u>, plaintiffs fail to allege any recognized injury. Accordingly, plaintiffs lack standing. <u>Second</u>, plaintiffs fail to state a claim upon which relief can be granted. Because they allege no valid injury, their gross negligence and negligence counts (Counts III and IV) fail to state a claim. And — although the basis of their "right to privacy" counts (Counts I and II) is not clear —

---

[1] Details of the program are available via the D.C. Government's website and ILIAC's DC-dedicated website.  *See* http://newsroom.dc.gov/show.aspx/agency/cfo/section/2/release/6359; http://www6.ingretirementplans.com/SponsorExtranet/DC457/summary.pdf; *see also* Declaration of J. Robert Bolchoz (Attachment 1), at ¶¶ 9, 12, 14 & 17 & Exs. B, D, F & I.

plaintiffs do not and cannot allege essential elements of any possible privacy claim. Third, and

in the alternative, the measures ILIAC has taken to protect the Participants provide all the relief

plaintiffs seek and could seek. This case is therefore moot. For each of these reasons, plaintiffs'

Complaint should be dismissed.

## BACKGROUND

According to the Complaint,[2] plaintiffs are seven current or retired D.C.

employees who are or were participants in the Plan. Compl. ¶ 2. ILIAC administers the Plan for

the D.C. Government; and ILIAC, its affiliates and representatives provide enrollment services

and investment education to current and former Plan Participants. *Id.* ¶ 16. In connection with

their participation in the Plan, plaintiffs provided information such as their names, dates of birth,

and Social Security numbers (the "data"). *Id.* ¶ 17.

Plaintiffs' data was contained on the laptop computer of an ILIAC representative,

so that the representative could perform his duties. *Id.* ¶¶ 19-20; Bolchoz Decl. ¶ 5.[3] The

representative is responsible for providing service to individual Participants, including in D.C.

Government offices and in their homes. *See* Bolchoz Decl. ¶¶ 4-5.

On or about June 11, 2006, the representative's home was burglarized and his

laptop was stolen. Compl. ¶ 19; Bolchoz Decl. ¶ 4. Nothing suggests that the burglar targeted

the laptop for the information it contained. To the contrary, the laptop was one of a number of

portable items — including a DVD player, a Sony PlayStation videogame system, a nail gun, an

---

[2] For purposes of this motion, the allegations in the Complaint are to be treated as true. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). However, ILIAC does not concede the truth of the allegations.

[3] The Court may consider material outside of the pleadings in ruling on a motion to dismiss on lack of standing or mootness grounds. *See Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *Schoenman v. FBI*, 2006 U.S. Dist. LEXIS 36243 at *16 (D.D.C. 2006) (Kollar-Kotelly, J.).

air compressor, loose change, and several cans of beer — that were stolen. Accordingly, the D.C. Police are treating this as an ordinary burglary. *See* Bolchoz Decl. ¶¶ 6-7 & Ex. A.

ILIAC took immediate action to address the incident. ILIAC conducted an investigation to confirm the nature of the data contained on the laptop. *See id.* ¶ 8. Upon concluding the laptop contained the Participants' data, ILIAC informed the D.C. Government and notified every affected Participant by letter. *See id.* ¶¶ 8-10 & Exs. B-D; *see also* Compl. ¶ 18. ILIAC also worked with its representatives to ensure that encryption technology (including password protection) was installed. *See* Bolchoz Decl. ¶ 18 & Ex. E.

In cooperation with the D.C. Government, ILIAC then took measures to ensure the Participants would experience no adverse effects as a result of the theft. First, ILIAC offered to purchase a top-of-the-line, third-party credit monitoring service — Equifax Credit Watch Gold — for any Participant who wishes to sign up for it, and offered to continue to pay for that service for as long as the Participant desires. *See* Bolchoz Decl. ¶¶ 9-14 & Ex. B-F, I. Credit Watch Gold is Equifax's premier credit monitoring service. It provides subscribers with unlimited free credit reports, automatic notification if any changes are made to their credit files, and up to $20,000 coverage for expenses incurred as a result of identity fraud. *Id.* ¶¶ 11-12 & Ex. D, H. Second, ILIAC pledged to compensate the Participants for any additional losses or expenses incurred because of identity theft or credit fraud resulting from the laptop theft. *Id.* ¶¶ 13-14, 17 & Exs. E-F, I. This "hold harmless" promise ensures that the Participants will be fully compensated in the unlikely event they ever experience losses as a result of the laptop theft that are not covered by Equifax Credit Watch Gold.

ILIAC has informed the Participants of these measures and facilitated their enrollment through web-site announcements, on-site seminars and follow-up letters. *See id.* ¶¶ 15, 17 & Exs. E-I. Moreover, ILIAC has promised that "[i]f further steps are required to

protect customers, we will take those steps." *Id.* ¶ 14 & Ex. F. These measures are truly unprecedented. Indeed, Equifax described ILIAC as providing "the 'best in class' response[]" to "data breach" incidents. *Id.* ¶ 16 & Ex. H.

On June 27, 2006, barely two weeks after the burglary and after ILIAC already had taken steps to protect the Participants from any loss or expense, plaintiffs filed their Complaint. Plaintiffs do not contend that they or any other Plan Participants have been victims of actual identity theft. Rather, the crux of their Complaint is that they "have been placed at a substantial risk of harm in the form of identity theft." Compl. ¶ 5. The Complaint includes four counts. Counts One and Two allege that ILIAC violated plaintiffs' "clearly established right to privacy." *Id.* ¶¶ 37, 39 (the "privacy counts"). Counts Three and Four allege that ILIAC was grossly negligent and negligent, respectively. *Id.* ¶¶ 39-42 (the "negligence counts"). Plaintiffs seek to represent a class of current and retired D.C. Government employees who are participants in the Plan. *Id.* ¶¶ 27-34.

ILIAC removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and now respectfully moves to dismiss.

## STANDARD OF REVIEW

Plaintiffs bear the burden of proving subject-matter jurisdiction. *See American Historical Ass'n v. National Archives & Records Admin.*, 310 F. Supp. 2d 216, 226 (D.D.C. 2004) (Kollar-Kotelly, J.). A court may dispose of a motion to dismiss under Rule 12(b)(1) "on the Complaint standing alone." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). Although plaintiffs' material factual allegations are taken as true, they receive closer scrutiny than that applied to a Rule 12(b)(6) motion. *See Brady Campaign To Prevent Gun Violence United With The Million Mom March v. Ashcroft*, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). In particular, "the Court need not accept factual inferences drawn by plaintiff if those

5

inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *American Historical Ass'n*, 310 F. Supp. 2d at 226. Moreover, "[w]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also American Historical Ass'n*, 310 F. Supp. 2d at 226 ("In its consideration of a motion under 12(b)(1), a district court may look beyond the pleadings to inquire into facts pertinent to its jurisdiction."); *Macharia v. United States*, 238 F. Supp. 2d 13, 19 (D.D.C. 2002) (Kollar-Kotelly, J.) (same).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must dismiss the action if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Macharia*, 238 F. Supp. 2d at 19. "[T]he Court assumes the veracity of all factual allegations set forth in Plaintiff's Complaint." *Id.* "Nonetheless, the Court is not bound to accept the legal conclusions of the non-moving party." *Id.*

## ARGUMENT

## I.    BECAUSE PLAINTIFFS ALLEGE NO RECOGNIZED INJURY, THEY LACK STANDING.

The Court can resolve ILIAC's motion to dismiss for lack of standing on the basis of the Complaint alone, because plaintiffs fail to plead a recognized injury. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs do not allege that they have suffered actual harm as a result of the theft of the laptop. They allege that they face a heightened risk of harm, due to the possibility of identity theft. However, federal courts uniformly have held that the mere risk of harm due to the loss or theft of personal data is not actionable injury. *See, e.g., Giordano v. Wachovia Sec., LLC*, No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006). Accordingly, plaintiffs fail to allege injury-in-fact sufficient to confer standing.

Standing is an "irreducible constitutional minimum," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and requires that plaintiffs plead and prove an "injury in fact." "Injury in fact" requires damage to a legally protected interest that is actual or imminent, not conjectural or hypothetical. *Id.* Although threatened injury may qualify, it must be "substantially likely," not remote or speculative, to confer standing. *American Petroleum Inst. v. United States EPA*, 216 F.3d 50, 63-64 (D.C. Cir. 2000); *see also Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (threatened injury must be "certainly impending"). If the court "ha[s] no way of knowing how or even whether" a threatened injury will come to pass, that injury is insufficiently concrete to confer standing. *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006). Significantly, in this Circuit, "[o]utside of increased exposure to environmental harms, hypothesized 'increased risk' has *never* been deemed sufficient 'injury'" to confer standing. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (emphasis added and citation omitted).

Plaintiffs' Complaint does not include sufficient allegations to demonstrate standing, because plaintiffs allege only the sort of "'increased risk'" that "has never been deemed sufficient 'injury'" to confer standing. *Id.* Specifically, plaintiffs claim that they "have been placed at a substantial risk of harm in the form of identity theft," Compl. ¶ 5, that the "disclosure of an individual's name, address, date of birth and Social Security number creates a substantial risk of identity theft," *id.* ¶ 23, and that "[a]s a direct and proximate result of [ILIAC's] acts and omissions," they "have been exposed to a risk of substantial harm and inconvenience," *id.* ¶ 26. Plaintiffs also allege that they "have incurred and will incur actual damages in an attempt to prevent identity theft by purchasing services to monitor their credit information." *Id.* ¶ 5. These allegations are not sufficient to establish standing.

Indeed, federal courts have uniformly held that the mere "risk of harm" that occurs when personal data is lost or stolen is not a legally-recognized injury. For example, in *Giordano*, the court held that plaintiffs lacked standing to raise claims arising out of the loss of a report containing the personal information of tens of thousands of bank customers. After the loss, plaintiff Giordano filed a class-action suit, alleging (among other things) negligence and the invasion of privacy. *Giordano*, 2006 WL 2177036, at *2. Although Wachovia had offered to pay for a single year of credit monitoring services, Giordano sought (among other things) an order requiring the company to extend its credit monitoring program or reimburse her for the cost of such services. *Id.*

The court concluded that Giordano "lack[ed] Constitutional standing" because she "failed to allege that she suffered an injury-in-fact that was either 'actual or imminent.'" *Id.* at *4. In particular, the court found that allegations that Giordano "will incur costs associated with obtaining credit monitoring services" were insufficient, because they did "not rise to the level of creating a concrete and particularized injury." *Id.* Because Giordano sought credit monitoring to protect against two hypothetical contingencies — Giordano's information "falling into the hands of an unauthorized person," and "that person using such information for unlawful purposes to [her] detriment" — the court held that she sought redress for "speculative and hypothetical future injuries." *Id.* at *5. This contingent risk was deemed insufficient to confer standing.[4]

The *Giordano* court relied upon three leading "lost data" cases, in which courts rejected claims arising out of the theft of or unlawful access to devices containing personal

---

[4] In *Giordano*, the court remanded to the state court for a determination whether the plaintiff had standing under state law. However, because the D.C. courts apply federal standing rules, *see Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002), the appropriate action here is to dismiss the case. *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003)

financial information. *Id.* at *5 (citing *Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-0185RHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005), *appeal docketed*, No. 05-16990 (9th Cir. Oct. 19, 2005), *Guin v. Brazos Higher Ed. Serv. Corp., Inc.*, No. 05-668, 2006 WL 288483 (D. Minn. Feb. 7, 2006), and *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018 (D. Minn. 2006)). In these cases the courts held that demands for damages or credit monitoring of precisely the sort alleged here are "solely the result of a perceived risk of future injury" and do not constitute "present injury or reasonably certain future risk of injury to support damages for any alleged increased risk of harm." *Giordano*, 2006 WL 2177036, at *5. Although these cases were decided on summary judgment, their rationale supports dismissal of this case for lack of standing — because each court held, as a matter of law, that the mere risk of identity theft as a result of lost or stolen data is not a recognized "injury."

In *Stollenwerk*, a putative class of government employee plaintiffs brought negligence claims against a government contractor for failure to protect their personal data. 2005 WL 2465906, at *1. After a burglary at the contractor's facility resulted in the theft of computer hard drives containing the plaintiffs' personal information, the plaintiffs purchased credit monitoring services and identity theft insurance at their own expense. *Id.* The court dismissed their negligence claim, however, concluding that the plaintiffs failed to show that the theft had injured them in any actionable way. *Id.* at *2. Absent proof that the purpose of the theft was to obtain the plaintiffs' personal data or that anyone accessed their data, the court found no basis for finding the increased risk to plaintiffs was sufficiently "significant" to allow recovery. *Id.* at *4-5.

*Guin* and *Forbes* followed *Stollenwerk's* common-sense rationale and held that the risk of harm due to lost or stolen personal information, as well as payment for credit monitoring to protect against that risk of harm, does not create actionable injury. In *Guin*, a case

similar to this one, a plaintiff brought a negligence claim against a company whose employee's laptop computer was stolen in a home burglary. The plaintiff's personal information was contained on the laptop, and he alleged that he suffered injury due to "out-of-pocket loss, emotional distress, fear and anxiety, [and] consequential and incidental damages." *Guin*, 2006 WL 288483, at *3. The court granted the defendant's motion for summary judgment, based on the *Stollenwerk* rationale. In particular, the court noted that the plaintiff had not shown (1) that his personal data was targeted or accessed by the thief, or (2) that "[plaintiff's] identity has been 'transferred, possessed, or used' by a third party." *Id.* at *6.

Similarly, in *Forbes* the court dismissed an action brought by a bank's customers for the bank's alleged negligent failure to protect them against identity theft. Computers containing the customers' personal information were stolen from a company that the bank had retained to print monthly statements. *Forbes*, 420 F. Supp. 2d at 1019. The court granted the bank's motion for summary judgment, concluding that any time and money the plaintiffs had spent monitoring their credit "was not the result of any present injury, but rather the anticipation of future injury that has not materialized." *Id.* at 1021.

Here, too, the increased risk plaintiffs allege is too hypothetical to constitute injury-in-fact. Plaintiffs do not and cannot reasonably allege that the purpose of the burglary was to obtain their personal information, that they have actually suffered from identity theft, or that they have suffered actual losses. Indeed, they do not clearly allege that any plaintiff has yet purchased and personally paid for credit monitoring services, *see* Compl. ¶ 5 — and, even if they did, the voluntary purchase of such services could not convert "non-injury" into "injury" for standing purposes. *See Giordano*, 2006 WL 2177036, at *5 & n.5 (voluntary expenditures due to "perceived risk of future harm" not "injury"); *Stollenwerk*, 2005 WL 2465906, at *1 (voluntary purchase of credit monitoring to protect against perceived future harm is not "injury"

for negligence purposes); *Forbes*, 420 F. Supp. 2d at 1021 (same); *Guin*, 2006 WL 288483, at
*2, *5 (same).[5]  Instead, plaintiffs rely upon their purported "expos[ure] to a risk of substantial
harm and inconvenience." Compl. ¶ 26.  "[W]ere all [such] purely speculative 'increased risks'
deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot,
because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of
future injury.'" *Ctr. for Law & Educ.*, 396 F.3d at 1161.  Plaintiffs' claim of increased risk does
not establish standing.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Court should dismiss the Complaint for the independent reason that plaintiffs
fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  The Court
should not — and need not — consider materials outside the pleadings to address ILIAC's
motion to dismiss on this ground.

### A.    Because Plaintiffs Allege No Recognized Injury, Plaintiffs Fail To State A Claim For Negligence.

Plaintiffs fail to state a claim for negligence or gross negligence (Counts III and
IV) for the same reasons that they lack standing.  Under District of Columbia law,[6] "[t]o
establish negligence a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a
breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately
caused by the breach." *District of Columbia v. Beretta, U.S.A., Corp.*, 847 A.2d 1127, 1135 n.2
(D.C. 2004) (quoting *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001)) (quotation

---

[5] Moreover, there is no need for any Participant to purchase credit monitoring services at his or
her own expense, because ILIAC already has offered to do so at its own expense. *See supra* n.1.

[6] In a diversity case such as this, "the substantive tort law of the District of Columbia controls."
*Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998).

marks and alteration omitted). "Gross negligence requires a more 'extreme departure from the ordinary standard of care' than does ordinary negligence." *Stevens v. Stover*, 727 F. Supp. 668, 673 n.9 (D.D.C. 1990). Allegations of "speculative" damages do not state a cause of action for gross or simple negligence. *Ibrahim v. Univ. of D.C.*, 742 A.2d 879, 881 n.2 (D.C. 1999) (tort claim failed where plaintiff neither alleged nor proved "more than speculative damages"); *see also Hill v. Republic of Iraq*, 328 F.3d 328 F.3d 680, 684 (D.C. Cir. 2003) (applying tort principles to conclude that an FSIA plaintiff must allege "reasonably certain" future injury). In short, negligence torts require actual injury.

    For the reasons discussed above, plaintiffs fail to plead that they have sustained actual or reasonably certain injury. *See Forbes*, 420 F. Supp. 2d at 1021 (rejecting negligence claim because "[p]laintiffs have shown no present injury or reasonably certain future injury to support damages for any alleged increased risk of harm"); *Guin*, 2006 WL 288483, at *6 (rejecting negligence claim for lack of injury where plaintiff had yet to "experience [any] instance of identity theft or any other type of fraud involving his personal information"); *Stollenwerk*, 2005 WL 2465906, at *5 ("Absent evidence that the data was targeted or actually accessed, there is no basis for a reasonable jury to determine that sensitive personal information was significantly exposed."); *see also Giordano*, 2006 WL 2177036, at *5 (same). Accordingly, their negligence counts (counts III and IV) must be dismissed.

### B.    Plaintiffs' "Privacy" Counts Fail To State A Claim Because ILIAC Cannot Violate Their Purported "Clearly Established Rights."

    In Counts I and II, plaintiffs allege that ILIAC has "violat[ed] . . . their clearly established right to privacy." Compl. ¶¶ 36, 37. Plaintiffs do not identify with any reasonable clarity the law they rely on for these causes of action — indeed, what should be Paragraph 38 of the Complaint is only a sentence fragment — and thus plaintiffs fail to satisfy even notice

pleading standards. In any event, because plaintiffs cannot state a claim against ILIAC for violating any "clearly established right to privacy," Counts I and II must be dismissed.

To the extent plaintiffs' claims are construed to assert violations of a constitutional right to information privacy, they fail. Federal constitutional guarantees apply only against state actors. *See, e.g., DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."). As plaintiffs acknowledge, ILIAC is a private company, not a state actor. *See* Compl. ¶ 16. Thus, plaintiffs cannot state a constitutional privacy claim.

To the extent plaintiffs' claims are construed to assert a state "invasion of privacy" tort, they also fail. Even upon the most liberal reading of their Complaint, the only tort plaintiffs remotely appear to attempt to assert is the public disclosure of private facts. But this tort requires: "(1) publicity (2) absent any waiver or privilege (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." *Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. 1989). And plaintiffs fail to properly allege that their private information was "publicly" disclosed. "'Publicity,' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) Torts § 652D cmt. A.[7] Plaintiffs allege merely that ILIAC's representative's laptop was stolen. *See* Compl. ¶ 2, 19. This is insufficient to allege "publicity."

---

[7] The D.C. courts have adopted the Restatement definitions of privacy torts. *See, e.g., Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C. 1985).

## III.    IN THE ALTERNATIVE, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS MOOT BECAUSE ILIAC HAS TAKEN ALL THE ACTION PLAINTIFFS SEEK.

In the alternative, this case should be dismissed because it is moot. Notwithstanding the attenuated nature of the risk of harm to Plan Participants, ILIAC has taken steps to eliminate any risk they may suffer any injury as a result of the laptop theft. Working with the D.C. Government, ILIAC has arranged and funded a lifetime credit monitoring and insurance program for any Participant who enrolls in the program, including plaintiffs. *See* Bolchoz Decl. ¶¶ 9-14, 17 & Exs. B, F, & I. In addition, ILIAC has committed to the Participants and to the D.C. Government that it would "hold harmless" any Participant who suffers any additional losses or expenses as a result of the computer theft — in perpetuity. *See id.* ¶¶ 13-14, 17 & Exs. E-F, I. Thus, there is nothing left for plaintiffs to recover, and this case is moot.

Federal courts may decide only "actual, ongoing controversies." *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal quotation marks omitted). Courts have no jurisdiction to decide cases if "'the decision will neither presently affect the parties' rights nor have a more-than speculative chance of affecting them in the future.'" *Law Office of Azita Mojarad v. Aguirre*, No. Civ. 05-0038 CKK, 2006 WL 785415, at *4 (D.D.C. Mar. 27, 2006) (Kollar-Kotelly, J.) (quoting *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 631 (D.C. Cir. 2002)). In particular, if a defendant takes "[c]orrective action" to give the plaintiff "everything that it could recover . . . by a judgment . . . in its favor," the case becomes moot. *Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) ("*NRDC*"); *see also* 13A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3533.2 ("[a]ction by the defendant that simply accords all the relief demanded by the plaintiff" moots a case).

14

ILIAC's provision of lifetime third-party credit monitoring and fraud protection coverage and its pledge to cover any losses give plaintiffs "everything that [they] could recover by a judgment." *NRDC*, 680 F.2d at 814. ILIAC has offered to purchase Equifax Credit Watch Gold for any Participant who wants it, and to continue that service for those Participants for life. *See* Bolchoz Decl. ¶¶ 9-14 & Exs. B-F, I. Credit Watch Gold is Equifax's top-of-the-line credit monitoring service. *Id.* ¶ 11 & Ex. H. Participants who subscribe to the service will receive — at ILIAC's expense — unlimited free credit reports. *Id.* ¶ 12. Equifax will notify them of any changes to their credit files — for example, if a new credit card is opened in their name. *Id.* And Equifax will provide up to $20,000 coverage for expenses incurred as a result of identity fraud. *Id.* In addition, to eliminate any possibility — however remote — that Participants will be harmed as a result of the incident, ILIAC has made a firm "hold harmless" pledge to compensate subscribers for any additional losses or expenses they incur as a result of identity theft or credit fraud. *Id.* ¶¶ 13-14 & Exs. E-F, I. ILIAC has widely publicized these efforts through public communications, on-site seminars, and follow-up letters. *Id.* ¶¶ 10-15, 17 & Exs. C-G, I. Simply put, there is nothing left for plaintiffs to recover.

These actions extend well beyond any remedial action taken in prior "lost data" incidents. Indeed, in none of the cases cited above does it appear that the defendant took the extensive measures ILIAC has taken to eliminate the possibility of harm. In *Stollenwerk*, there is no indication that the defendant provided any remedial measures at all — in fact, the defendant appears to have argued that the plaintiffs were partially at fault for failing to avail themselves of free fraud monitoring procedures and obtain credit insurance on their own. 2005 WL 2465906, at *5 n.3. In *Guin*, the defendant did not offer to pay for anything, but merely issued a letter urging potentially affected parties to use a free 90-day fraud monitoring service and established a customer service call center to monitor claims. 2006 WL 288483, at *2. In *Forbes*, the

defendant offered unspecified "informational and identity protection services"; however, the plaintiffs also spent their own time and money to monitor their own credit. 420 F. Supp. 2d at 1019. And in *Giordano*, the defendant offered to pay for only a year's worth of credit monitoring services. 2006 WL 2177036, at *1-2. In none of these cases did the defendant offer to pay for lifetime credit monitoring services or provide a "hold harmless" pledge, as ILIAC has here. As such, Equifax has described ILIAC as "rais[ing] the bar in terms of the 'best in class' responses" to "data breach" incidents. Bolchoz Decl. ¶ 16 & Ex. H.

Lastly, plaintiffs' ancillary requests for relief do not allow them to avoid mootness. *See* Compl. at 10-11 (Prayer for Relief). Plaintiffs' request for declaratory relief, in the absence of injury or damages, merely seeks an advisory opinion. *See Committee in Solidarity with the People in El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) (remedial action moots declaratory and injunctive relief). Having received full relief from any conceivable future harm from the laptop theft, plaintiffs cannot benefit from such a "declaration" in any tangible way. *See id.* Nor is there any basis for an injunction requiring ILIAC to institute "appropriate safeguards" for plaintiffs' information and to create "a credit monitoring program . . . under this Court's supervision." Compl. ¶¶ 10-11. To obtain an injunction plaintiffs "must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries." *Sessions*, 929 F.2d at 744. There is no possibility of injury due to the June laptop theft, because ILIAC is providing full protection to those who wish to receive it. Where, as here, "the possibility of continuing injury disappears while the lawsuit is pending, the complaint ordinarily should be dismissed as moot." *Id.*

In short, even if this Court were to go against the weight of authority and hold that plaintiffs had standing and stated a claim, ILIAC's voluntary actions have given plaintiffs all the relief they could possibly receive. The Court "can hardly order [ILIAC] at this point to do

16

something that it has already done." *NRDC*, 680 F.2d at 814. Accordingly, this case is moot and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

For the foregoing reasons, ILIAC respectfully requests that the Court enter an order dismissing all claims with prejudice.

Dated: September 1, 2006                    Respectfully submitted,

                                            /s/     Stephen M. Nickelsburg
                                            Alan Charles Raul, D.C Bar # 362605
                                            Juan P. Morillo, D.C. Bar # 257790
                                            Stephen M. Nickelsburg, D.C. Bar #475920
                                            Peter C. Pfaffenroth, D.C. Bar #496637
                                            SIDLEY AUSTIN LLP
                                            1501 K Street, NW
                                            Washington, DC 20005
                                            (202) 736-8000

                                            Attorneys for Defendant
                                            ING Life Insurance & Annuity Company