IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINA A. RANDOLPH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 06-1228 (CKK) |
| ) | |
| ING LIFE INSURANCE AND ) | |
| ANNUITY COMPANY ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANT
ING LIFE INSURANCE AND ANNUITY COMPANY'S MOTION TO DISMISS**

Defendant ING Life Insurance and Annuity Company ("ILIAC"), through undersigned counsel, respectfully submits this Reply in Support of its Motion to Dismiss for lack of standing, for failure to state a claim, and for mootness.

**INTRODUCTION**

Plaintiffs' Opposition to ILIAC's Motion to Dismiss essentially abandons the claims pled in their Complaint. Plaintiffs offer virtually no response to the overwhelming case law holding that the mere risk of harm from lost or stolen data is not a sufficient "injury" to confer standing. *See* Mem. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 6-11. Plaintiffs also do not dispute they must plead a valid injury to state a claim upon which relief can be granted, and they offer no support for their "invasion of privacy" claims at all. *See id.* at 11-13. In short, plaintiffs do not respond to the principal arguments in ILIAC's Motion to Dismiss. Thus, they have conceded them. *See Fox v. American Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments

made by the defendant, the court may treat those arguments as conceded.") (internal quotation marks and citation omitted).

Instead, plaintiffs take a different tack. Relying on entirely new theories nowhere suggested in the Complaint, plaintiffs argue that they actually pleaded claims for a "breach of confidential relationship" or for violations of previously uncited (and irrelevant) provisions of the D.C. Code. *See* Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") at 11 (citing *Vassiliades v. Garfinckel's*, 492 A.2d 580, 590 (D.D.C. 1985) (recognizing "a right of action for breach of the *physician-patient* confidential relationship") (emphasis added), and D.C. Code §§ 1-742, 1-747, & 1-626.13-.14). Although the standards of notice pleading are liberal, they are not so loose as to allow plaintiffs to conjure up entirely new claims in this manner. To the contrary, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (internal quotation omitted).

Even if the Court liberally construes plaintiffs' Opposition as a motion to amend the Complaint to add the newly-contrived counts, ILIAC is entitled to dismissal because plaintiffs' efforts are futile. *See Graves v. United States*, 961 F. Supp. 314, 317 (D.D.C. 1997) (following this approach). Neither the alleged "breach of physician/patient confidential relationship" tort plaintiffs now invoke nor the D.C. Code pension provisions they now cite provide plaintiffs a cause of action against ILIAC. *See* Fed. R. Civ. P. 12(b)(6). Moreover, regardless of how plaintiffs characterize their claims, they must plead a recognized "injury in fact" to establish standing — which they cannot do. *See* Fed. R. Civ. P. 12(b)(1).[1]

---

[1] For the same reasons, if the Court determines that plaintiffs' Complaint can be read, without amendment, to encompass plaintiffs' new-found claims, those claims must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

Finally, plaintiffs offer no serious rebuttal to the argument that the case is moot because ILIAC took prompt action to eliminate even the most remote and contingent possibility of harm to the Plan Participants[2] as a result of the laptop theft.[3] For all of these reasons, this case must be dismissed.

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING.

#### A.   Plaintiffs Confirm that Their Alleged "Injury" Is the "Risk of Harm" from Future Identity Theft, Which Is Insufficient to Confer Standing.

In a hollow attempt to show that they allege standing to sue, plaintiffs' Opposition reproduces, in full text, approximately 20 paragraphs of their Complaint. *See* Pls.' Opp'n at 4-7. Plaintiffs do not identify which portions of those paragraphs they claim support their standing. Nor do they dispute the fact that their only alleged injury is a heightened risk of future harm, due to the possibility of identity theft. Indeed, every paragraph in the Complaint that sets forth an allegation of harm — including every paragraph reproduced in the Opposition — relies exclusively on the potential risk of future identity theft.[4]

---

[2] This Reply will use the terms "Plan" and "Participants" as defined in the Memorandum in Support of ILIAC's Motion to Dismiss, at 1-2.

[3] According to a recent article in the *New York Times*, "while high-profile data breaches are common, there is no evidence of a surge in identity theft or financial fraud as a result. In fact, there is scant evidence that identity theft and financial fraud have increased at all." *Surging Losses, but Few Victims in Data Breaches*, N.Y. Times, Sept. 27, 2006, at C1 (*available at* http://www.nytimes.com/2006/09/27/technology/circuits/27lost.html?ex=1160193600&en=778b 8efa6e1b4880&ei=5070). Instead, "'[t]he threat of identity theft from data losses is being greatly exaggerated . . . because a lot of people have fallen into the trap of equating data loss with identity theft.'" *Id.* (quoting Fred H. Cate, Director of the Center for Applied Cybersecurity Research at Indiana University in Bloomington).

[4] *See* Pls.' Opp'n at 4-7 (quoting Compl. ¶ 5 ("Plaintiffs and those similarly situated have been placed at a *substantial risk of harm in the form of identity theft* and have incurred and will incur actual damages *in an attempt to prevent identity theft by purchasing services to monitor their credit information*."), *id.* ¶ 23 ("The unauthorized and unconsented disclosure of an individual's name, address, date of birth and Social Security number creates *a substantial risk of identity*

The risk of future identity theft is not an "injury-in-fact." *See Giordano v. Wachovia Sec., LLC*, No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006). *Giordano* is the most recent in an unbroken line of "lost data" cases holding that plaintiffs whose personal information is lost or stolen must plead or prove some "present injury," and that the remote and speculative "heightened risk of future identity theft" is not enough. *Id.* at *5; *see also Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006); *Guin v. Brazos Higher Ed. Serv. Corp., Inc.*, No. 05-668, 2006 WL 288483 (D. Minn. Feb. 7, 2006); *Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-0185RHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005), appeal docketed, No. 05-16990 (9th Cir. Oct. 19, 2005). Absent a present, concrete injury-in-fact, plaintiffs lack standing to sue under both federal and D.C. law. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) ("hypothesized 'increased risk' has never been deemed sufficient injury" to confer standing); *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002) (D.C. courts apply federal standing rules). Accordingly, looking only at the allegations of the Complaint — and taking each of those allegations as true — plaintiffs have not met their burden to establish standing. *See American Historical Ass'n v. Nat'l Archives & Records Admin.*, 310 F. Supp. 2d 216, 226 (D.D.C. 2004) (plaintiffs bear the burden of pleading and proving standing).

---

*theft.*"), *id.* ¶ 25 (alleging that "ING's unauthorized and unconsented disclosures . . . and the imminent and substantial *risk of identity theft* to which Plaintiffs and Class Members have been exposed," is ILIAC's fault), *id.* ¶ 26 ("As a direct and proximate result of Defendant's acts and omissions, Plaintiffs and Class Members have been exposed to *a risk of substantial risk of harm and inconvenience*, and have incurred or will incur *actual damages in purchasing comprehensive credit reports and/or monitoring of their identity and credit* for the indefinite future."), *id.* ¶ 29 ("Plaintiffs and all members of the putative class have been adversely affected and damaged *in that their private information has been compromised and stolen.*")) (emphases added).

### B. Plaintiffs' "Breach of Fiduciary Duty" Arguments Do Not Establish Standing.

Yielding to the overwhelming weight of the case law, plaintiffs do not attempt to argue that their allegations provide standing for their negligence or invasion of privacy claims. Instead, plaintiffs essentially abandon the claims pleaded in the Complaint and attempt to distinguish the "lost data" cases on the ground that none involved allegations of a "breach of confidentiality" or "breach of fiduciary duty." *See* Pls.' Opp'n at 8-10.

As an initial matter, plaintiffs are simply wrong. The *Giordano* decision explicitly states that the case involved a "four-count complaint," which included "breach of the duty of confidentiality" and "invasion of privacy" counts. 2006 WL 2177036, at *1. The court held that plaintiff lacked standing to pursue these claims. *Id.* Indeed, each of the "lost data" cases involved banks, insurers, and financial institutions — entities with relationships to customers similar to the relationship between ILIAC and the Plan Participants. *Stollenwerk* involved the manager of "the local region of the U.S. Department of Defense's health insurance program," which "possessed the personal information . . . of the beneficiaries of that program." 2005 WL 2465906, at *1. *Forbes* and *Guin* involved the theft of customer information from a bank and a financial institution — and in each of those cases plaintiffs initially brought, but then dismissed, breach of fiduciary duty claims. *Forbes*, 420 F. Supp. 2d at 1020 n.2; *Guin*, 2006 WL 288483, at *2. The very premise of the "lost data" cases is that the defendants had a duty of confidentiality with respect to the personal information entrusted to them. Plaintiffs' effort to distinguish the cases cited by ILIAC is unavailing.

Plaintiffs' purported distinction is especially unavailing because *plaintiffs themselves* have pled no "breach of confidentiality" or "breach of fiduciary duty" claim. *See* Compl. Counts 1-2 (alleging violations of "right to privacy"), Counts 3-4 (alleging negligence and gross negligence). Nor does the Complaint include any reference to, or attempt to state a

5

claim under, the provisions of the D.C. Code that plaintiffs cite to bolster their standing argument. *See* Pls.' Opp'n at 7. Plaintiffs' Complaint does not even include the word "fiduciary." Allegations and claims that are missing from the Complaint cannot support plaintiffs' standing. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("Because there is no hint of these [allegations] in the Amended Complaint, the Court therefore cannot consider these allegations in deciding the instant motion to dismiss.").[5]

To deal with the fact that their Complaint does not include a "breach of fiduciary duty" or "breach of confidentiality" claim, plaintiffs attempt to shoehorn this new cause of action into their "invasion of privacy" counts. *See* Pls.' Opp'n at 7 (describing their "invasion of personal privacy" claim as "more specifically stated, the breach of fiduciary duty"). Plaintiffs' recharacterization makes no difference to the standing analysis, however, because allegations of a breach of duty without a resulting "injury-in-fact" confer no standing to sue. This is true as a matter of standing law. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that the "irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact, (2) causation, and (3) redressability); *Friends of Tilden Park, Inc.*, 806 A.2d at 1206 (federal standing rules apply in D.C. courts). And it is true as a matter of D.C. tort law. *See Vassiliades*, 492 A.2d at 591 ("The object of the cause of action based on breach of confidentiality is not to fulfill expectations, but to compensate the resulting injuries."); *Beckman*

---

[5] Plaintiffs nowhere identify the "Federal Statute" that they contend ILIAC violated, Pls.' Opp'n at 2, much less explain how that purported statute provides standing.

*v. Farmer*, 579 A.2d 618, 651 (D.C. 1976) ("[A] breach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby.") (internal quotation omitted).[6]

Thus, *even if* plaintiffs had pled a "breach of confidential relationship" tort, and *even if* that tort applied outside the doctor-patient relationship (*see infra* at 12 (explaining that it does not)), plaintiffs *still* have standing only if they allege a recognized injury. Because plaintiffs fail to allege any recognized injury, even under their newly-minted "breach of confidentiality" theory, plaintiffs lack standing.

Plaintiffs' citations to various "civil enforcement" provisions of the D.C. Code also are completely misplaced, for three reasons. First, plaintiffs do not allege them as a basis for standing — or for any other purpose. Second, the provisions do not purport to grant standing to a plaintiff who otherwise lacks "injury-in-fact" under federal (and thus D.C.) law. And they could not. *See Lujan*, 504 U.S. at 576 (rejecting argument that a statute creating a right to sue allowed the court to "ignor[e] the concrete injury requirement" for standing); *id.* at 581 (Kennedy, J., concurring) (citizen suit provisions only authorize suits for persons who can "show that the action injures [them] in a concrete and personal way"). Third, the provisions do not apply to plaintiffs at all. Specifically, plaintiffs allege they are participants in the D.C. 457 voluntary deferred compensation plan. *See* Compl. ¶¶ 16-17.[7] The civil enforcement provisions of D.C. Code § 1-747 do not apply to the D.C. 457 Plan; they apply to the mandatory pension funds established pursuant to D.C. Code §§ 1-701 through 1-753. Nor does D.C. Code § 1-

---

[6] This principle is universal. *See, e.g., Gray v. Bicknell*, 86 F.3d 1472, 1488 (8th Cir. 1996) ("Under Missouri law, an individual action for breach of fiduciary duty requires an individual injury and a nexus between the injury and the breach of fiduciary duty").

[7] The "457" voluntary deferred compensation plan is the government worker equivalent to a "401(k)" plan.

7

626.14 apply to the D.C. 457 Plan; it applies only to beneficiaries of a separate plan, the "Section 401(a) Trust." *See* D.C. Code § 1-626.14 ("A civil action may be brought by a participant or beneficiary of the Trust . . . ."); *id.* § 1-626.04(7) ("The term 'Trust' shall mean the Section 401(a) Trust established by § 1-626.11."). In short, plaintiffs take these provisions completely out of context, and they provide no basis for standing.

In sum, plaintiffs' new-found theories, if the Court chose to consider them, would not save their Complaint. Plaintiffs cannot allege the necessary, concrete injury-in-fact. Thus, they cannot plead standing.

### C. The Proper Disposition of this Case Is Dismissal.

To prolong litigation that cannot (and should not) survive, plaintiffs ask the Court to remand the case to D.C. Superior Court if they are found to lack standing. *See* Pls.' Opp'n at 11 n.2. Plaintiffs rely upon a provision of the removal statute (28 U.S.C. § 1447(c)), and two cases remanding to Superior Court where the basis for removal jurisdiction was lacking. *See Walker v. Waller*, 267 F. Supp. 2d 31, 32 (D.D.C. 2003) (remanding a diversity case where the removing party could not show that the amount-in-controversy exceeded $75,000); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002) (discussing remand for lack of jurisdiction due to defects in "removal status"). Here, there is no flaw in this Court's removal jurisdiction: The parties are indisputably diverse and the controversy exceeds the required amount. *See* Am. Not. Removal ¶¶ 2-10. Thus, § 1447(c) simply does not apply.

Nor do plaintiffs identify any other basis for remand. This is not a case, for example, as in *Giordano*, where the standing rules in the relevant state court differ and the plaintiffs' fate thus arguably could be different in the two fora. *See* 2006 WL 2177036, at *5; *see also* Def.'s Mem. at 8 n.4. Here, the federal and state standing rules are exactly the same, *see Friends of Tilden Park, Inc.*, 806 A.2d at 1206, and remanding for lack of standing would be a

8

futile waste of judicial resources. Thus, in a recent case removed from D.C. Superior Court, the district court simply dismissed the case after concluding that the plaintiffs lacked standing. *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003). The Supreme Court has followed the same approach. *See DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1868 (2006) (ordering that a removed claim be dismissed where plaintiffs lacked standing).[8] Accordingly, upon finding that plaintiffs lack standing, the Court should dismiss this case with prejudice.

## II. PLAINTIFFS FAIL TO STATE A CLAIM.

Even if this Court finds that plaintiffs have standing, this case should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### A. Plaintiffs Have Abandoned Their Negligence Claims.

Plaintiffs make no effort to defend the adequacy of their negligence or gross negligence claims. Instead, they argue only that their Complaint alleges a "breach of confidential relationship" claim. *See* Pls.' Opp'n at 11-12. Accordingly, plaintiffs' negligence and gross negligence claims must be dismissed for the reasons set forth in ILIAC's Motion to Dismiss. *See* Def.'s Mem. at 11-12; *Fox*, 295 F. Supp. 2d at 58.

---

[8] *See also Bell v. City of Kellogg*, 922 F.2d 1418, 1424-25 (9th Cir. 1991) (declining to remand after finding lack of standing, because "[d]istrict court resolution of the entire case prevents any further waste of valuable judicial time and resources."); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) (declining to remand after finding lack of personal jurisdiction because "[a] remand . . . would be a futile gesture, wasteful of scarce judicial resources, an exercise in which we decline to engage"). No federal circuit has required the remand of a case to state courts that have adopted federal standing law. *Cf. Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 496-97 (6th Cir. 1999) (ordering remand to Ohio state courts); *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1081 (Ohio 1999) (Ohio courts, unlike federal courts, "are free to dispense with the requirement for injury where the public interest so demands."); *Giordano, supra*, at *5 (same, in New Jersey).

**B.     Plaintiffs Have Abandoned Their "Invasion of Privacy" Claims, and They Cannot State a Claim for "Breach of Confidentiality."**

Plaintiffs make no effort to defend their "invasion of privacy" claims as pled. And they could not, because the only remotely analogous "invasion of privacy" tort ("public disclosure of private facts," *see* Def.'s Mem. at 13) requires widespread disclosure of the private information. *See Vassiliades*, 492 A.2d at 588 (finding "publicity" requirement satisfied where plaintiff's "embarrassing and emotionally distressing" medical information "was broadcast on television and to a large audience"). Thus, plaintiffs have abandoned their "invasion of privacy" claims as pled, and those claims must be dismissed. *See* Def.'s Mem. at 12-13; *Fox*, 295 F. Supp. 2d at 58.

Rather than defend their deficient claims, plaintiffs argue they have stated a claim for "the breach of a fiduciary duty" or "breach of confidential relationship," and that two D.C. Code provisions "provide[] independent bases for the recovery of damages." Pls.' Opp'n at 11. But that is not what the Complaint alleges. Counts One and Two state, in full:

### COUNT ONE

35. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1 through 36 herein above.

36. The foregoing acts and omissions of the Defendant constitute[] an authorized [*sic*], nonconsensual and inappropriate disclosure of Plaintiffs' Social Security numbers in violation of their clearly established right to privacy.

### COUNT TWO

37. Plaintiffs repeat and reaffirm the assertions of fact contained in paragraphs 1 through 36 herein above.

[*sic*[9]] employees records and to protect against known and anticipated threats or hazards to the security and integrity of Plaintiffs' private personal records in violation of their clearly established right of privacy.

---

[9] According to plaintiffs, Paragraph 38 (which is a sentence fragment in the Complaint) should have stated:

Compl. ¶¶ 36-38; *see also id.* ¶¶ 2-3 (alleging "violation of [plaintiffs'] clearly established right of privacy"). Counts Three and Four are the negligence counts. *See* Compl. ¶¶ 39-42.

Plaintiffs' argument that their invasion of privacy claim is "more specifically stated" as a breach of fiduciary duty claim, *see* Pls.' Opp'n at 7, conflates two separate torts — "invasion of privacy" and "breach of confidential physician/patient relationship." *See Vassiliades*, 492 A.2d at 585-590 and 591-92 (describing the separate torts). Even liberally construed, plaintiffs' Complaint can be read only to plead the tort of invasion of privacy, not the tort of breach of confidential relationship. And, although plaintiffs' brief relies upon D.C. Code provisions governing D.C. pension plans as "independent bases" for relief, those provisions are nowhere to be found in the Complaint. If plaintiffs want to plead a new cause of action, they must seek leave to amend. They may not avoid a motion to dismiss by arguing claims they did not plead. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (claimants' pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Coleman*, 94 F. Supp. 2d at 24 n.8 ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss . . . .") (internal quotation omitted); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (same); *Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F. Supp. 2d at 170 (same).

If, however, the Court construes plaintiffs' Opposition as a motion to amend the Complaint, the Court must deny it as futile. "A motion to amend the Complaint should be

---

> *38. The foregoing acts and omissions of Defendant ING constitute a willful and intentional failure to establish appropriate safeguards to ensure the security and privacy of District of Columbia employees records and to protect against known and anticipated threats or hazards to the security and integrity of Plaintiffs' private personal records in violation of their clearly established right of privacy.*

Pls.' Opp'n at 6 (new text in italics). However, plaintiffs have made no effort to correct their pleading.

denied as 'futile' if the complaint as amended could not withstand a motion to dismiss." *Graves*, 961 F. Supp. at 317. Plaintiffs cannot state a claim against ILIAC for the tort of "breach of confidential relationship." An essential element of this cause of action is actual injury. *See Vassiliades*, 492 A.2d at 591 ("The object of the cause of action based on breach of confidentiality is not to fulfill expectations, but to compensate the resulting injuries."); *see also supra* at 6-7. For the reasons set forth above and in the Motion to Dismiss, plaintiffs cannot and have not alleged any recognized injury.

Moreover, the D.C. courts have applied the tort of "breach of confidential relationship" only in the context of the *physician-patient* relationship. *See Vassiliades*, 492 A.2d at 591-92 (discussing at length the special nature of the physician-patient relationship); *see also Street v. Hedgepath*, 607 A.2d 1238, 1246 (D.C. 1992) (observing that the D.C. Court of Appeals "has recognized a cause of action in tort for a breach of the confidential *physician-patient relationship*") (emphasis added). The D.C. courts have not recognized the tort of "breach of confidential relationship in the circumstances that plaintiffs allege here — and this Court should not extend it.[10] Plaintiffs' alternative "breach of confidential relationship" claim must fail.

Plaintiffs also cannot state a claim under the D.C. Code provisions they cite, because (as stated above) those provisions do not apply to them. *See supra* at 7-8. Perhaps for this reason, plaintiffs do not even identify the nature of their purported claim — for example, by identifying *which* "act or practice violates" *which* "provision of this Chapter," as is required to state a claim under these provisions. *See* Pls.' Opp'n at 8 (quoting D.C. Code § 1-626.14); *see*

---

[10] *Wagman*, on which plaintiffs rely, was a garden variety breach of fiduciary duty case, not a "breach of confidentiality" case. *See Wagman v. Lee*, 457 A.2d 401, 405 (D.C. 1983) (allowing damages for breach of fiduciary duty where escrow agent misappropriated client funds).

*also id.* (quoting D.C. Code § 1-747). Plaintiffs thus fail to establish even a minimal basis for their purported claim.

### III. PLAINTIFFS' CLAIMS ARE MOOT.

Plaintiffs' contention that this case is not moot is pure bluster. First, plaintiffs ask the Court to exclude ILIAC's affidavit in support of mootness, citing "the language of Rule 12." Pls.' Opp'n at 12. The language plaintiffs cite, however, is the language of Rule 12(b)(6), which does not apply to the mootness argument. A motion to dismiss for mootness lies under Rule 12(b)(1). *See Law Office of Azita Mojarad v. Aguirre*, No. Civ. A. 05-0038 (CKK), 2006 WL 785415, at *4 (D.D.C. Mar. 27, 2006).

In deciding a Rule 12(b)(1) motion, the court "may look beyond the pleadings." *See American Historical Ass'n*, 310 F. Supp. 2d at 226. Indeed, "in some instances, a court is *required* to look beyond the pleadings and to inquire into facts that are pertinent to the determination of whether it has subject matter jurisdiction." *Macharia v. United States*, 238 F. Supp. 2d 13, 19 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003) (emphasis added). Moreover, because a motion to dismiss for mootness "places the burden on the plaintiff to prove that facts exist that establish a court's jurisdiction," *id.*, a plaintiff may not respond to affidavit evidence demonstrating mootness with "mere allegations" to the contrary. *National Ass'n of Home Builders v. Babbitt*, 990 F. Supp. 1, 4-5 (D.D.C. 1997) (internal quotation marks omitted). Instead "a plaintiff must *through testimony and affidavits*, demonstrate that a case is properly before the court." *Macharia*, 238 F. Supp. 2d at 21 (emphasis added). Plaintiffs fail to meet that burden.

In support of its motion to dismiss, ILIAC presented the Declaration of J. Robert Bolchoz, who as Head of National Accounts is responsible for ILIAC's relations with the District of Columbia, including ILIAC's response to the laptop theft. Bolchoz Decl. ¶ 2. In his

Declaration, Mr. Bolchoz testified at length about the substantial steps ILIAC has taken to ensure that no participant in the D.C. Plan suffers a scintilla of harm as a result of the theft. *Id.* ¶¶ 9-17. In support of his testimony, Mr. Bolchoz offered a variety of documentary evidence — including publicly available statements from the D.C. Government's web site, direct representations from ILIAC to the Plan participants, and information from third parties. *Id.* ¶¶ 9-17 and Exs. B-I.

In their Opposition, plaintiffs provide not a shred of evidence that ILIAC's representations and actions are not genuine and substantial. Plaintiffs take issue with only one of the nine exhibits supporting the Bolchoz Declaration — on grounds of admissibility, not credibility. *See* Pls.' Opp'n at 12. As to the rest, plaintiffs simply aver that they "vigorously dispute that defendant has taken the remedial actions alleged." *Id.* Plaintiffs offer absolutely no support for this assertion, and they have no good-faith basis for making it.

Plaintiffs' argument can be explained only as an effort to prolong this case (and the burden and expense imposed on ILIAC) through a fishing expedition of "jurisdictional discovery." Where, as here, plaintiffs respond to "affidavit evidence with mere speculation," discovery is inappropriate. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (internal quotation omitted). Jurisdictional discovery is available only when a plaintiff shows that "discovery could produce [facts] that would affect [the] jurisdictional analysis." *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994). "When requesting jurisdictional discovery . . . a plaintiff must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Atlantigas Corp. v. NiSource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (finding a "conclusory and vague" discovery request to be "insufficient") (internal quotation omitted). Here, plaintiffs identify no colorable "dispute of fact," no discovery needed to resolve that dispute, and no inkling of what they hope to discover.

By contrast, ILIAC has pledged that it is providing and will provide credit monitoring for all Plan Participants who request it and that ILIAC will hold the Participants harmless for any loss resulting from the laptop theft. This Court is entitled to rely on ILIAC's sworn statement, letters to the Participants and the Mayor of the District of Columbia, and other public record evidence that plaintiffs claims have been fully satisfied. *See Committee in Solidarity with the People of El Salvador v. Sessions*, 929 F.2d 742, 744-745 (D.C. Cir. 1991) (affirming dismissal for mootness where district court "relied on representations made by the FBI and its Director to the court (and to Congress), rather than on facts established in an adversary proceeding," because "'it has been the settled practice' to accept such representations in determining whether a case presents a live controversy") (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)).[11]

Finally, plaintiffs claim that ILIAC has not satisfied their demand for $10,000 apiece in damages. Pls.' Opp'n. at 12. As explained in ILIAC's Motion to Dismiss, the only financial harms alleged are the cost of credit monitoring to protect against future identity theft — and ILIAC has agreed to pay for such monitoring. *See* Def.'s Mem. at 15. Plaintiffs' demand for the windfall of additional damages does not save their case from mootness.

## CONCLUSION

For the foregoing reasons, ILIAC respectfully requests that the Court dismiss all claims with prejudice.

---

[11] Of course, the Court may not grant jurisdictional discovery until resolving any other ground that "may dispose of the case without imposing the burden of jurisdictional discovery," such as ILIAC's motions to dismiss for lack of standing and failure to state a claim. *Artis v. Greenspan*, 223 F. Supp. 2d 149, 154 (D.D.C. 2002); *see also Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). And any jurisdictional discovery is to be "carefully controlled and limited" to the disputed facts. *Artis*, 223 F. Supp. 2d at 154.

Dated: October 9, 2006                    Respectfully submitted,

  /s/ Stephen M. Nickelsburg
Alan Charles Raul, D.C Bar # 362605
Juan P. Morillo, D.C. Bar # 257790
Stephen M. Nickelsburg, D.C. Bar #475920
Peter C. Pfaffenroth, D.C. Bar #496637
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

Attorneys for Defendant
ING Life Insurance & Annuity Company