UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINA RANDOLPH, *et al.*,

    Plaintiffs,

      v.

ING LIFE INSURANCE AND ANNUITY
COMPANY,

    Defendant.

Civil Action No. 06-1228 (CKK)

**MEMORANDUM OPINION**
(February 20, 2007)

Plaintiffs, seven current or retired District of Columbia employees, bring this purported

class action on behalf of individuals whose private personal information, including Social

Security numbers, was contained on the laptop computer of a representative of Defendant ING

Life Insurance and Annuity Company ("ING"), which was stolen during a burglary of the

representative's home.  Plaintiffs' Complaint alleges two counts of invasion of privacy, one

count of gross negligence, and one count of negligence.  Defendant has moved to dismiss

Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on three

grounds: (1) that Plaintiffs fail to allege any injury in fact and thus lack standing; (2) that

Plaintiffs fail to state a claim on which relief can be granted; and (3) that Plaintiffs' claims are

moot because Defendant has already provided Plaintiffs all the relief they seek.  Upon a

searching review of Defendant's Motion to Dismiss, Plaintiffs' Opposition, Defendant's Reply,

and the relevant statutes and case law, the Court concludes that Plaintiffs lack standing because

they fail to allege a cognizable injury in fact.  As such, the Court will not reach Defendants' other

arguments for dismissal, shall deny without prejudice Defendant's Motion to Dismiss, and shall

remand this case to the Superior Court for the District of Columbia, pursuant to 28 U.S.C. §

1447(c).

## I. BACKGROUND

Defendant ING Life Insurance and Annuity Company ("ING") provides investment

advice, administrative services, and record keeping to participants in the District of Columbia

457 Deferred Compensation Plan (the "Plan"). Compl. ¶ 16. Plaintiffs allege that they are seven

of more than 13,000 current and former District of Columbia employees who, in connection with

their participation in the Plan, provided ING with their private personal information, including

their names, addresses, and Social Security numbers (hereinafter "Plaintiffs' Information"). *Id.*

¶¶ 2, 17.[1] Plaintiffs further allege that, on or around June 12, 2006, "a low-ranking data analyst

and long time ING employee," removed files containing Plaintiffs' Information from an ING

facility and took the files to his home, where he copied them onto his laptop computer. *Id.* ¶ 19.[2]

The ING employee's laptop computer  – containing Plaintiffs' Information – were subsequently

---

[1] Plaintiffs Regina A. Randolph and Tony Giles are District of Columbia Police Officers; Plaintiffs Tonia Robinson, Darlene V. Fields, Marthine Bartee, and Tamonica Heard are District of Columbia employees; and Plaintiff Don Pope is a retired District of Columbia Police Officer. Compl. ¶¶ 9-15. All Plaintiffs allege that they have been notified by ING that their personal data was contained on the stolen laptop computer. *Id.*

[2] Plaintiffs' Complaint generally describes Plaintiffs' Information as having been contained on a computer and/or external disks, which were stolen from the ING employee's home. *See, e.g.*, Compl. ¶ 19. More specifically, the Complaint indicates that each Plaintiff "has been notified by the Defendant that [his or her] personal data was contained on the subject laptop." *Id.* ¶¶ 9-15. As ING's Motion to Dismiss confirms that Plaintiffs' Information was contained on a laptop stolen from the home of an ING employee, *see* ING Mot. to Dismiss at 2-4, for ease of reference, the Court shall describe Plaintiffs' Information as having been contained on a stolen laptop computer.

stolen during a burglary of the representative's home, *id.*, and on or around June 19, 2006, ING publicly announced that the private information of 13,000 District of Columbia workers and retirees had been disclosed as a result of the burglary. *Id.* ¶ 18.

Plaintiffs do not allege that the burglary was anything other than a common burglary or that it was undertaken for the purpose of accessing Plaintiffs' Information. Rather, Plaintiffs allege that the ING employee in question "was able to easily access computer files containing" Plaintiffs' Information to copy the files onto his personal laptop, and "had been removing the data from [sic] ING facility for a significant period of time in a practice expressly or implicitly ratified by ING." *Id.* ¶ 20. Plaintiffs assert that the ING employee's access to and duplication of Plaintiffs' Information violated Plaintiffs' right to privacy, and was "the result of ING's grossly negligent and/or willful and intentional failure to establish appropriate safeguards to ensure the security and confidentiality of District of Columbia employee records and to protect against any anticipated threats or hazards to the security and integrity of those records." *Id.* Furthermore, Plaintiffs allege that ING knew about the burglary within hours of its occurring, but did not inform Plaintiffs of the burglary until seven days later, "despite knowledge of the imminent and substantial risk of serious harm to the personal security of the affected employees." *Id.* ¶ 21. Finally, Plaintiffs allege upon information and belief, that the stolen laptop computer has not been recovered and can easily be accessed and duplicated because it is not encrypted or password protected. *Id.* ¶ 19.[3]

───────────────────

[3] In connection with its Motion to Dismiss, ING submitted the Declaration of J. Robert Bolchoz, which details the steps taken by ING in the wake of the burglary. ING Mot. to Dismiss at Att. 1 (Bolchoz Decl.). The Bolchoz Declaration is offered in support of ING's argument that Plaintiffs' claims are moot because ING has already provided Plaintiffs all the relief they seek. *See* ING Mot. to Dismiss at 14-17. As noted below, in resolving a motion to dismiss made

Plaintiffs assert that the "unauthorized and unconsented disclosure of an individual's name, address, date of birth and Social Security number creates a substantial risk of identity theft," *id.* ¶ 23, and that "nationwide studies confirm that, on average, victims of identity theft spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve their credit issues," *id.* ¶ 24. Significantly, however, none of the Plaintiffs assert that they have actually been the victim of identity theft. Instead, Plaintiffs allege that the disclosure of their Information raises concerns about Plaintiffs' safety because, for example, Plaintiffs' Information could be used to find out where police personnel live. *Id.* ¶ 26. Specifically, Plaintiffs allege that as a "direct and proximate result of [ING's] acts and omissions, they "have been exposed to a risk of substantial harm and inconvenience, and have incurred or will incur actual damages in purchasing comprehensive credit reports and/or monitoring of their identity and credit for the indefinite future." *Id.*

Plaintiffs filed their four-count Complaint in the Superior Court for the District of Columbia on June 27, 2006. Counts One and Two of Plaintiffs' Complaint allege that ING's acts and omissions violated Plaintiffs' "clearly established right to privacy." *Id.* ¶¶ 35-38. Counts Three and Four of Plaintiffs' Complaint allege that ING's acts and omissions constituted gross negligence and negligence, respectively. *Id.* ¶¶ 39-42. ING removed this action to the

---

pursuant to Rule 12(b)(1), the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). It would, therefore, be appropriate for the Court to consider the Bolchoz Declaration in addressing ING's mootness argument. However, as the Court concludes that Plaintiffs lack standing because they fail to allege an injury in fact, the Court does not reach ING's mootness argument, and therefore does not consider the Bolchoz Declaration.

4

United States District Court for the District of Columbia on July 7, 2006, pursuant to 28 U.S.C.

§§ 1441, 1446, and 1453. On September 1, 2006, ING filed its Motion to Dismiss Plaintiffs'

Complaint (hereinafter "ING's Mot. to Dismiss"). Plaintiffs filed their Opposition to ING's

Motion to Dismiss on September 25, 2006, and ING filed its Reply on October 9, 2006.

Thereafter, on October 13, 2006 and October 18, 2006, ING filed Notices of Supplemental

Authority, advising the Court of decisions handed down after ING's Motion to Dismiss was fully

briefed, which ING believes provide additional support for its Motion to Dismiss. Plaintiffs filed

a Response to ING's Notices of Supplemental Authority on October 24, 2006, which ING

subsequently moved to strike on October 27, 2006. Plaintiffs opposed ING's Motion to Strike on

November 6, 2007, and ING filed a Reply in support of its Motion to Strike on November 7,

2007.

## II.  LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a case when it

lacks subject matter jurisdiction. In general, a motion to dismiss under Federal Rule of Civil

Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their

claim that would entitle them to relief." *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A court may

appropriately dispose of a case under 12(b)(1) for standing, and may "consider the complaint

supplemented by undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground

Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v.*

5

*Greenspan*, 223 F. Supp. 2d 139, 152 n.1 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)). At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

B.      *Federal Rule of Civil Procedure 12(b)(6)*

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint."

*Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

## III. DISCUSSION

ING argues that Plaintiffs' Complaint should be dismissed for three separate and independent reasons: (1) pursuant to Federal Rule of Civil Procedure 12(b)(1), ING argues that Plaintiffs fail to plead a recognized injury and therefore lack standing, *see* ING Mot. to Dismiss at 6-11; (2) pursuant to Federal Rule of Civil Procedure 12(b)(6), ING argues that Plaintiffs fail to state a claim upon which relief can be granted, *see id.* at 11-13; and (3) ING argues that this case is moot because ING has already taken steps to eliminate any risk that Plaintiffs may suffer injury as a result of the theft of the laptop computer, *see id.* at 14-17. The Court agrees with ING that Plaintiffs lack standing because they have failed to plead an injury in fact. The Court therefore does not reach ING's other arguments in favor of dismissal, but instead shall remand this case to the Superior Court for the District of Columbia, pursuant to 28 U.S.C. § 1447(c).

A.    *Plaintiffs Lack Standing Because They Fail to Plead an Injury in Fact*

As an Article III court, this Court's judicial power is limited to adjudicating actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen*, 468 U.S. at 750, 104 S. Ct. 3315). These doctrines incorporate both the prudential elements, which "Congress is free to override," *id.* (quoting *Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1278 (D.C. Cir.1994)) (internal quotations omitted), and "core component[s]" which are "essential and unchanging part[s] of the case-or-controversy requirement of Article III," *id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal quotations omitted)).

Standing is an "irreducible constitutional minimum." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130. In order to satisfy the constitutional standing requirements, a plaintiff must establish that he or she has (1) suffered an injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) which is fairly traceable to the challenged act, and (3) is likely to be redressed by a favorable decision. *Nat'l Treasury Employees Union*, 101 F.3d at 1427 (citing *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130). To ground Article III standing, "the injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract. Rather it must be certainly impending." *Id.* (internal citations and quotations omitted).

In arguing that Plaintiffs fail to plead an injury in fact, ING points to a number of recent

"lost data" cases from federal courts, in which a plaintiff's private personal information has been exposed to a third party as the result of theft or unlawful access. *See* ING Mot. to Dismiss at 8-11 (citing *Giordano v. Wachovia Sec., LLC*, No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006); *Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-0185PHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005); *Guin v. Brazos Higher Ed. Serv. Corp., Inc.*, No. 05-668, 2006 WL 288483 (D. Minn. Feb. 7, 2006); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018 (D. Minn. 2006)); *see also* ING Not. of Supp. Auth. (citing *Bell v. Axicom Corp.*, No. 06-485, (E.D. Ark. Oct. 3, 2006)); ING Second Not. of Supp. Auth. (citing *Key v. DSW, Inc.*, No. 2:06-cv-459 (S.D. Ohio Sept. 27, 2006)). In each of these cases, the court determined that an allegation of increased risk of identity theft due to lost or stolen personal data, without more, is insufficient to demonstrate a cognizable injury.[4]

The most analogous of these "lost data" cases are *Giordano* and *Key*. In *Giordano*, plaintiff, a customer of Wachovia Securities, LLC, filed a class action lawsuit on behalf of a class of individuals whose private personal information (names, addresses, and Social Security numbers) was included in a printed report that was lost in shipping. *See Giordano*, 2006 WL 2177036, at *1. Claiming that she had suffered an injury in the form of an increased likelihood that she would become a victim of identity theft, and that she would incur costs associated with obtaining credit monitoring services in order to prevent identity theft, *id.* at *4, the plaintiff in

---

[4] *Giordano*, *Bell*, and *Key* determined that an increased risk of identity theft failed to demonstrate an injury in fact sufficient to ground Article III standing, *see Giordano*, 2006 WL 2177036, at *4; *Bell*, No. 06-485, Slip. Op. at 5-6 (E.D. Ark. Oct. 3, 2006); *Key*, No. 2:06-cv-459, Slip. Op. at 8-10 (S.D. Ohio Sept. 27, 2006); while *Stollenwerk*, *Guin*, and *Brazos* determined that such a claim failed to demonstrate injury or damage sufficient to survive a motion for summary judgment, *see Stollenwerk*, 2005 WL 2465906, at *5; *Guin*, 2006 WL 2465906, at *6; *Forbes*, 420 F. Supp. 2d at 1020-21.

*Giordano* asserted claims of negligence, invasion of privacy, and breach of the duty of confidentiality, *id.* at *2. However, the *Giordano* court dismissed the plaintiff's claims, finding that she "lack[ed] Constitutional standing . . . because [she had] failed to allege that she suffered an injury-in-fact that was either 'actual or imminent.'" *Id.* at *4.

The *Giordano* court's decision was grounded, in part, on the fact that "[p]laintiff failed to allege even that her financial information was stolen or ended up in the possession of someone who might potentially misuse it." *Id.* at *5. In contrast, here Plaintiffs allege that they have been informed by ING that their Information was contained on the stolen laptop. Compl. ¶¶ 9-15. Still, Plaintiffs do not allege "that the purpose of the burglary was to obtain their personal information, that they have actually suffered from identity theft, or that they have suffered actual losses." ING Mot. to Dismiss at 10. As such, the instant case is similar to *Key*, in which "unauthorized persons obtained access to and acquired the information of approximately 96,000 customers," including the plaintiff. *Key*, Slip. Op. at 2. The *Key* plaintiff alleged that she had "been subjected to a substantial increased risk of identity theft of other related financial crimes," *id.* at 7, and brought a class action lawsuit that included claims of negligence and breach of fiduciary duty, *id.* at 2-3. The *Key* court dismissed the plaintiff's claims for lack of standing, finding that her "potential injury [was] contingent upon her information being obtained and then used by an unauthorized person for an unlawful purpose" and that plaintiff had not "alleged evidence that a third party intend[ed] to make unauthorized use of her financial information or her identity." *Id.* at 10.

Similarly, Plaintiffs in the instant action allege that they "have been placed at a substantial risk of harm in the form of identity theft." Compl. ¶ 5. They fail, however, to allege

any injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130. Plaintiffs clearly allege that their Information was stolen by a burglar, but they do not allege that the burglar who stole the laptop did so in order to access their Information, or that their Information has actually been accessed since the laptop was stolen. Plaintiffs' allegations therefore amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft. However, to ground Article III standing, "the injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract. Rather it must be certainly impending." *Nat'l Treasury Employees Union*, 101 F.3d at 1427. Plaintiffs' claims that they are subject to an increased risk of identity theft and inconvenience as a result of the burglary therefore fail to allege an injury in fact.

While the focus of Plaintiffs' Complaint is on their allegedly increased risk of identity theft, Plaintiffs also allege that they "have incurred and will incur actual damages in an attempt to prevent identity theft by purchasing services to monitor their credit information." Compl. ¶ 5. Plaintiffs do not specifically allege which, if any, of them have actually purchased and paid for credit monitoring services, or which services those individuals have purchased and paid for. *Id.* Nor do Plaintiffs specifically request that this Court reimburse them for any out-of-pocket losses incurred. *See* Compl. at 10-11. In any event, even if individual Plaintiffs have purchased and paid for credit monitoring services, the "lost data" cases cited by ING clearly reject the theory that a plaintiff is entitled to reimbursement for credit monitoring services or for time and money spent monitoring his or her credit. *See Giordano*, 2006 WL 2177036, at *5 & n.5; *Stollenwerk*, 2005 WL 2465906, at *1; *Guin*, 2006 WL 288483, at *3; *Forbes*, 420 F. Supp. 2d at 1020-21. As the *Forbes* court explained, an argument that the time and money spent monitoring a

11

plaintiff's credit suffices to establish an injury "overlook[s] the fact that their expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized." 420 F. Supp. 2d at 1021. Thus, the *Forbes* court found that plaintiffs had not shown a "present injury or reasonably certain future injury to support damages for any alleged increased risk of harm" because their injuries were "solely the result of a perceived risk of future harm." *Id.*; *see also Key*, Slip Op. at 9-10 (citing *Forbes*). Plaintiffs' allegation that they have incurred or will incur costs in an attempt to protect themselves against their alleged increased risk of identity theft fails to demonstrate an injury that is sufficiently "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130.

B.    *Plaintiffs' Complaint Does Not Allege a Breach of Fiduciary Duty of Confidentiality or a Statutory Violation*

In their Opposition, Plaintiffs do not identify any case in which a court has determined that an allegedly increased risk of identity theft constitutes a sufficiently "actual or imminent" injury in fact. Instead, Plaintiffs attempt to distinguish the "lost data" cases cited by ING on the ground that those cases did not involve allegations of a "breach of confidentiality" or "breach of fiduciary duty." Pls' Opp'n at 8-10. As an initial matter, Plaintiffs are absolutely wrong in this assertion. *Forbes* involved a claim for breach of fiduciary duty, *see* 420 F. Supp. 2d at 1020, and *Giordano* involved a claim for breach of duty of confidentiality, *see* 2006 WL 2177036 at *1. Likewise, *Key*, cited by ING as supplemental authority, alleged a claim of breach of fiduciary duty. *See* Slip Op. at 1.[5]

_____

[5] Subsequent to ING's filing of two Notices of Supplemental Authority, on October 24, 2006, Plaintiffs filed a Response to ING's Notices. A review of Plaintiffs six-page Response reveals that only the first page of the Response actually addresses the cases cited by ING as supplemental authority, asserting that "[t]he problem with the alleged supplemental authorities is

Moreover, Plaintiffs' attempt to distinguish the "lost data" cases on this ground is entirely unavailing because Plaintiffs' Complaint does not assert a claim for either breach of the duty of confidentiality or breach of fiduciary duty.  In contrast, Plaintiffs' Complaint includes four Counts, two claims for invasion of privacy, one claim for gross negligence, and one claim for negligence.  *See* Compl. ¶¶ 35-42.  Nevertheless, in their Opposition, Plaintiffs assert that their Complaint supports an "avenue for recovery" for "an unwarranted invasion of privacy or more specifically stated, the breach of a fiduciary duty."  Pls' Opp'n at 7.  In support of this argument, Plaintiffs cite to *Vassiliades v. Garfinckel's*, 492 A.2d 580 (D.C. 1985), in which the D.C. Court of Appeals described the tort of breach of confidential relationship as "consisting of the 'unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship,'" *id.* at 591, and further assert that "ING undeniably occupies a fiduciary relationship with the plaintiffs."  Pls' Opp'n at 7.  However, Plaintiffs' Complaint simply does not include a claim for breach of fiduciary duty or even include the word "fiduciary."  While it is true that "the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . the 'short

---

twofold."  Pls' Resp. at 1.  The remainder of Plaintiffs' Response consists of attempts to rebut ING's Reply in support of its Motion to Dismiss.  *See id.* at 2-6.  As a result, on October 27, 2006, ING moved to strike Plaintiffs' Response as an improper surreply, *see* ING Mot. to Strike, an effort that Plaintiffs oppose, *see* Pls' Resp. to Def's Mot. to Strike.  "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002).  Here, despite being styled as a Response to ING's Notices of Supplemental Authority, Plaintiffs' Response, with the exception of its first page, amounts in essence to a surreply.  Plaintiffs have not moved for leave to file a surreply, nor does their Response "address new matters raised in a reply."  Instead, Plaintiffs' Response seeks to continue arguing matters already addressed in Plaintiffs' Opposition.  As a result, the Court shall strike Plaintiffs' Response, with the exception of the first page, because it constitutes an improper surreply.

and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharm. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (citing Fed. R. Civ. Proc. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Plaintiffs' Complaint is entirely devoid of allegations from which ING could be deemed to be on notice of a claim for breach of fiduciary duty.

Nor does Plaintiffs' Complaint provide any indication, even under the liberal notice pleading standard, that they seek relief based on a provision of the D.C. Code.  In their Opposition, Plaintiffs cite to two civil enforcement provisions of the D.C. Code and assert that, based on these provisions, they "clearly have standing to bring this lawsuit as they are all participants in either the District Retirements Benefit Program D.C. Code § 1-626.05 (District employees) or the District of Columbia Retirement Program (Police, Firefighters, Teachers and Judges) D.C. Code § 1-702."  Pls' Opp'n at 8.  However, Plaintiff's Complaint contains absolutely no reference to any of those provisions, and certainly does not indicate that Plaintiffs intend to state a claim based on those provisions.  Plaintiffs have not offered to amend or moved to amend their Complaint to include claims of breach of fiduciary duty or a statutory violation. *See Belizan v. Hershon*, 434 F.3d 579, 582-83 (D.C. Cir. 2006) ("a request for leave [to amend] must be submitted in the form of a written motion.").  Moreover, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. v. United Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)).  As a result, Plaintiffs cannot now attempt to assert that they have standing based on claims that are entirely

14

absent from their Complaint.

Moreover, Plaintiffs' attempt to recharacterize their Complaint is of absolutely no consequence to the Court's conclusion that they lack standing because they fail to allege a sufficiently "actual or imminent" injury in fact.  As noted above, standing is an "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130, and as a result, Plaintiffs must demonstrate an injury in fact as a prerequisite to pursuing any cause of action.  Therefore, even if the Court were to consider Plaintiffs' Complaint as properly pleading claims for breach of fiduciary duty and violations of the D.C. Code, Plaintiffs' Complaint would still fail to allege an injury in fact sufficient to ground Article III standing.  In the absence of Article III standing, Plaintiffs are unable to pursue any claims before this Court, regardless of how such claims are denominated.

C.    *The Court Shall Remand This Case to the Superior Court for the District of Columbia*

In light of the Court's conclusion that Plaintiffs lack Article III standing, the Court need not reach ING's other jurisdictional argument and cannot reach ING's merits argument.  *See DEK Energy Co. v. Fed. Energy Regulatory Comm'n*, 248 F.3d 1192, 1194 (D.C. Cir. 2001). As a result, the Court shall remand this case to the Superior Court for the District of Columbia, from which it was removed by ING.  Pursuant to 28 U.S.C. § 1447(c), "[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case."  *Republic of Venezula v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).  Despite this clear instruction, ING argues that the Court should dismiss this case because "there is no flaw in this Court's removal jurisdiction."  ING Reply at 8-9.  In

support of their argument for dismissal, ING cites a case from this District as well as a Supreme

Court case, in which courts dismissed, rather than remanded, cases removed from state court

following a conclusion that the plaintiffs lacked standing. *Id.* (citing *Williams v. Purdue Pharma*

*Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003); *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct.

1854, 1868 (2006). Those cases, however, do not discuss their rationale for ignoring the

command of 28 U.S.C. § 1447(c), nor does the plain text of 28 U.S.C. § 1447(c) indicate that

remand is only required where a case has been improperly removed. 28 U.S.C. § 1447(c).

   In addition, ING argues that remand would be a "futile waste of judicial resources,"

because the standing rules applicable to federal courts apply equally to the Superior Court for the

District of Columbia. ING Reply at 8-9 (citing *Friends of Tilden Park, Inc. v. District of*

*Columbia*, 806 A.2d 1201, 1206 (D.C. 2002)). To this end, ING cites cases from the Fifth and

Ninth Circuits in which those courts declined to remand cases pursuant to § 1447(c). ING Reply

at 9 n. 8 (citing *Bell v. City of Kellogg*, 922 F. 2d 1418, 1424-25 (9th Cir. 1991); *Asarco, Inc. v.*

*Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990)). However, the "futility exception" recognized

by the Fifth and Ninth Circuits has been expressly rejected by the Third, Fourth, Seventh, and

Tenth Circuits, the First and Second Circuits have not adopted a futility exception when given

the opportunity to do so, and the Supreme Court, in dicta, has expressed a reluctance to recognize

a futility exception. *See Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213-14 (3d Cir.

1997) (citing *Roach v. West Virginia Reg'l Jail & Correctional Facility Auth.*, 74 F.3d 46, 49

(4th Cir. 1996); *Smith v. Wisconsin Dept' of Agriculture*, 23 F.3d 1134, 1139 (7th Cir. 1994);

*Jepsen v. Texaco, Inc.*, 68 F.3d 483, 1995 WL 607630, at *3 (10th Cir. 1995); *Maine Ass'n of*

*Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Svcs.*, 876 F.2d 1051, 1055

16

(1st Cir. 1989); *Barbara v. New York Stock Exch.*, 99 F.3d 49, 56 n.4 (2d Cir. 1996); *Int'l*

*Primate Protection League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 89, 111 S. Ct. 1700,

114 L. Ed. 2d 134 (1991)).

      As a result, the Court declines to recognize a futility exception, especially in light of the

D.C. Circuit's instruction – which is binding on this Court – that "[w]hen it appears that a district

court lacks subject matter jurisdiction over a case that has been removed from a state court, the

district court *must* remand the case." *Republic of Venezula*, 287 F.3d at 196 (emphasis added).

Cognizant of the fact that the Superior Court for the District of Columbia may also conclude that

Plaintiffs lack the requisite standing to pursue their claims in that forum, the Court shall leave

such a decision to the discretion of the Superior Court, and remand this case pursuant to 28

U.S.C. § 1447(c).

## IV.  CONCLUSION

      For the foregoing reasons, the Court concludes that Plaintiffs have failed to allege an

injury in fact and thus lack Article III standing.  The Court shall deny without prejudice

Defendant's Motion to Dismiss.  However, as this Court finds itself without subject matter

jurisdiction over the instant case, the Court shall remand this case to the Superior Court for the

District of Columbia pursuant to 28 U.S.C. § 1447(c).

Date:   February 20, 2007

                                      _____*/s/*_____

                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge